Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7836 | **DATE** | 5/14/2002 |
| **CASE TITLE** | Greg Little vs. Illinois Dept of Revenue et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 23-1) for summary judgment is granted. All other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | **MAY 1 5 2002** | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 4\| |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREG LITTLE, )
)
Plaintiff, )
)
vs. ) 00 C 7836
)
ILLINOIS DEPARTMENT OF )
REVENUE, et al., )
)
Defendants. )

DOCKETED
MAY 15 2002

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on Defendants' motion for summary judgment. For the reasons set forth below, the motion is granted.

## BACKGROUND

Plaintiff Greg Little ("Little") is an employee of Defendant Illinois Department of Revenue ("the Department"). In 1994, he was assigned to work as a gaming agent for Defendant Illinois Gaming Board ("the Board") on the Empress Riverboat Casino in Joliet, Illinois. Shortly after he was given this assignment, Little was discharged. Nearly two years later, he was reinstated to a position with the IDOR pursuant to an arbitration award. In mid 1999, Little returned to the Empress after requesting to be transferred there.

In January 2000, shortly after Little went back to work at the Empress, IGB received complaints about Little's conduct toward Empress employees. A report generated by the Department's Internal Affairs Division ("IAD") concluded that Little had conducted himself in a manner unbecoming an IDOR employee. No action was taken against Little because of procedural defects in the disciplinary process. The following July, Little was again the subject of allegations of misconduct. These allegations involved interactions between Little and another Empress employee, Kevin Kickels ("Kickels"). The parties differ on precisely what happened in these interactions.

According to the IAD report, Little approached Kickels and asked him to accompany Little to his office. A surveillance video camera outside Little's door showed the two men entering the office and exiting approximately 15 minutes later. Kickels claimed that the conversation revolved around a purported incident that occurred between Kickels and a hostess at the Empress named Janice Sheard ("Sheard"). Kickels stated that he felt Little was trying to intimidate him by threatening to go to his superiors about the matter with Sheard. A few weeks later, Kickels reported the incident to Chris Corrado, his superior, as well as IAD inspectors. Kickels' story was corroborated by Allison Dwyer ("Dwyer"), who coordinated the hostesses aboard the Empress. Dwyer reported to the IAD inspectors that Little had spoken to Kickels

about Sheard and the other hostesses not liking Kickels or his method of management. Based on Dwyer's statements and other findings made during the investigation, the IAD determined that the allegations against Little were substantiated by a preponderance of credible evidence.

Little recounts the story differently. He claims that the conversation regarding the hostesses never happened. Rather, he claims the July 1 meeting stemmed from an encounter with Kickels outside the Empress in late May 2000. According to Little, he overheard Kickels make a racist statement about his subordinates. Little says he immediately approached Kickels about the comment, informing him that he would report him to the IGB if he ever heard him make such a comment again. As to the content of the meeting on July 1, Little says that Kickels requested the meeting to apologize to Little and explain that he was not a racist. Little goes on to dispute most of the facts listed in the IAD report and insists that the investigators acted improperly during their interviews of him. While the investigation proceeded, Little filed two charges with the EEOC, one against the Board on July 27, 2000, and one against the Department on August 9, 2000. He also began a letter-writing campaign to inform state government officials and high-ranking Department officials of his perception of the investigation and the motivations he believed were driving it.

Upon completing the investigation, the IAD officers submitted their report to Sergio Acosta, the Board's Administrator, and Deputy Administrator Thomas Swoik, who both concluded that the investigation was comprehensive and that the recommendations it set out were supported by the facts the report contained. Several members of the Department's management, including Administrator Robert Tapscott, Labor Relations Manager Carol Morgan, Staff Attorney James Day, also reviewed the report and made similar conclusions. Morgan, Tapscott, Swoik, Acosta, and Day then brought the IAD report and their own conclusions based on its contents to the attention of Glen Bower, the Department's Director. Bower also decided that the conduct the report attributed to Little was unacceptable and violated the Department's rules. Acosta recommended that Little be severely sanctioned, and Bower instructed Tapscott to initiate the disciplinary process. Tapscott then had Morgan draw up a statement of charges, which formed the basis of the charges presented to Little at a predisciplinary conference in October 2000. Another Deputy Administrator for the Board, Joe Haughey, and Deputy Administrator for the Investigation Division, James Wagner, presided over the conference and prepared a memorandum summarizing Little's response to the written charges and the IAD report. The memorandum stated that Little had advanced no grounds that would lead Haughey or Wagner to modify the proposed disciplinary action, which would consist of more than an oral reprimand.

After some additional investigation, Acosta, Morgan, Tapscott, and Bower concluded that the appropriate course of action was to discharge Little. In December, Little was discharged but was once again reinstated pursuant to an arbitrator's decision in November 2001.

Little received his right-to-sue letter for his EEOC charges in September 2000 and filed this action in December, just before his discharge was finalized. The four-count complaint asserts claims based on Title VII and 42 U.S.C. § 1983. The Defendants now collectively move for summary judgment off all claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers

the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is with these principles in mind that we address the instant motion.

## DISCUSSION

Little's complaint consists of four counts, two arising from Title VII, 42 U.S.C. §§ 2000e-2, 2000e-3, and two finding their basis in 42 U.S.C. § 1983. We address the claims of retaliation and race discrimination in violation of Title VII first.

**Retaliation and Race Discrimination Claims**

It is apparent from the submissions in this case that the parties have had a lengthy and less than amicable history. Consequently, each side brings up events long past in support of their respective positions. In examining Little's Title VII claims, however, we are limited to considering events that occurred within 300 days before Little filed his EEOC charges. In other words, to make his case against the Board and the Department, Little can look no further back than October 3, 1999, and October 14, 1999, respectively.

Counts I and II of the complaint allege that the Department and the Board took disciplinary action for complaints Little had made about discriminatory practices to the EEOC and state government officials and that the discipline Little received was harsher because of his race. He also claims that the Board duped him into requesting the July 1999 transfer to the Empress for the same reasons.

Little has offered no direct evidence of retaliation or race discrimination, so he must rely on the applicable formulations of the McDonnell Douglas burden-shifting analysis to establish indirect evidence of unlawful activity. Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 472 (7th Cir. 2002). To prevent the Department and the Board from obtaining summary judgment on his claim of retaliation, Little must show that after he lodged his complaints, only he, and not any other similarly situated employee who did not file a charge, was brought up on charges and suspended even though he was performing his job satisfactorily. Stone v. City of Indianapolis Public Utilities Div., 281 F.3d 640, 644 (7th Cir. 2002). To prevail on his claim of race discrimination, Little must satisfy four elements: (1) he belongs to a protected class, (2) he performed his job in accordance with his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees not in the same protected class received more favorable treatment. Curry v. Menard, Inc., 270 F.3d 473, 477 (7th Cir. 2001). If Little shows that his situation meets both sets of criteria,

the burden shifts to the Department and the Board to produce a legitimate nondiscriminatory or nonretaliatory reason for taking the actions they did. Id. The burden then shifts back to Little to prove that their reasons are in fact a pretext for discrimination or retaliation. Contreras v. Suncast Corp., 237 F.3d 756, 760 (7th Cir. 2001). There is much overlap between the analyses required for Little's two claims, and indeed the Board and the Department present the same arguments of insufficiency for both claims. Namely, they contend as to both claims that has Little has not shown that he was meeting legitimate expectations, that any similarly situated employees who received more favorable treatment, or that the reasons given for their employment decisions were pretextual.

A similarly situated employee is one who is directly comparable to Little in all material respects. Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). There must be no meaningful distinctions between comparables if plaintiff is to show that other, better-treated employees were similarly situated. See Freeman v. Madison Metropolitan Sch. Dist., 231 F.3d 374, 383 (7th Cir. 2000). It is not enough for Little to merely throw up examples of white employees who received lesser punishments in the abstract; he must also show that the differing disciplinary actions were in response to like offenses.

Little offers eight examples of employees purportedly afforded more favorable treatment: Darylann Baron, Scott Deubel, Frank Ucho, James Oliver, Sam Rossi, Mike Barry, John Novak, and Steve Hirsch. To be similarly situated to Little, these employees must engage in similar conduct without the kind of distinguishing circumstances that would explain the different treatment, be subject to the same standards, and have the same supervisors. Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000). Considering only the conduct involved in each of these disciplinary cases, it is clear that the employees to whom Little points are not similarly situated. The situations of Baron, Rossi, and Ucho are immediately distinguishable; they were punished only for use of improper language. Although use of profanity and other offensive language was part of the charges brought against Little, that was not the sum total of the misconduct cited in the report or the subsequent charges. There is certainly nothing insidious about doling out lesser punishment for lower levels of misdeeds. See Spath v. Hayes Wheels Int'l-Indiana, Inc., 211 F.3d 392, 397 (7th Cir. 2000); Thompson v. John J. Madden Mental Health Center, 2000 WL 1780348, at *4 (N.D. Ill. Dec. 4, 2000). As for the claimed congruity of Novak, Hirsch, and Barry, those three employees were accused of misusing state-owned vehicles. That type of wrongdoing is simply not analogous enough to Little's situation to offer any kind of meaningful comparison of consequences. Hiatt v. Rockwell Int'l Corp., 26 F.3d 761,

771 (7th Cir. 1994). Finally, Little looks to the treatment of Oliver and Deubel. Both employees engaged in serious misconduct: Deubel for using his position to improperly obtain and distribute criminal history information and Oliver of receiving pay from two different state agencies for the same hours of work. At first blush, Deubel's situation bears some resemblance to Little's; both were charged with using their authority for improper purposes. Closer inspection, however, reveals two crucial differences. First, Little was charged with misusing his position to intimidate and harass other employees. Such abuse of authority disrupts the working environment and affects the performance of other employees, a consequence that would not necessarily result from behavior like Deubel's. Moreover, the ultimate decision on what punishment each employee would receive came from two completely separate sources (Bower, the Department's Director, for Little, and the ISP Merit Board for Deubel), indicating that in addition to not engaging in the same conduct, Little and Deubel did not have the same supervisors. See Radue, 219 F.3d at 618. Without the same decisionmakers, the two disciplinary decisions are not comparable. Finally, Little offers Oliver for the purpose of showing retaliation. We are unpersuaded that Oliver was in fact similarly situated, since the differences between the situations of Little and Oliver extend beyond the fact that Oliver did not file charges with the EEOC or complain to the powers that be of alleged discriminatory practices. Like Deubel, Oliver did not engage in conduct that would

render his workplace tense and tumultuous. There is also no indication that either Deubel or Oliver did not cooperate with investigators assigned to their cases. Although Little of course disputes that he was uncooperative, the fact that the allegation was leveled against him makes his situation and the range of possible outcomes very different from what Deubel and Oliver confronted. We conclude that Little has not been able to produce a similarly situated employee who received more favorable treatment than he, and this inability is fatal to his Title VII claims. See, e.g., Hilt-Dyson v. City of Chicago, 282 F.3d 456, 465 (7th Cir. 2002) (retaliation); Lalvani v. Cook County, 269 F.3d 785, 789 (7th Cir. 2001) (discrimination).

Even if Little were able to identify a similarly situated employee, he would still have to face the question of the sufficiency of his work performance. Whether Little was meeting the legitimate expectations of his employer for the purposes of establishing his prima facie case is debatable. The conflicting stories and evidence that have been presented as to what actually happened between Little and Kickels and during the IAD interviews preclude us from deciding as a matter of law that Little was not adequately performing his assigned duties. Whether the Board and the Department honestly believed that Little engaged in the behavior detailed in the IAD report is a separate issue, one that is amenable to resolution on summary judgment even if the plaintiff can arguably make it past the element of adequate job performance. Vakharia v. Swedish

Covenant Hospital, 190 F.3d 799, 807 (7th Cir. 1999). When determining the sincerity of an employer's claim of honesty, our analysis is suffused with considerations of reasonableness, because a belief that is objectively reasonable is more likely to be honestly held. Gordon v. United Airlines, Inc., 246 F.3d 878, 889 (7th Cir. 2001), quoting Flores v. Preferred Technical Group, 182 F.3d 512, 516 (7th Cir. 1999).

The IAD investigation concluded that Little had exceeded his authority and abused his position by attempting to intimidate Kickels during the July 1 meeting. Kickels' version of the events of that evening was corroborated by both Allison Dwyer and Chris Corrado. The report also stated that Little did not cooperate with IAD investigators when asked about the content of that meeting during official interviews. Little claims that he did in fact answer all questions put to him during the interview and offers the testimony of Rossi and Kinsella in support. However, their recollections of the events of the August 2, 2000, interview, particularly Kinsella's, do not render the report unworthy of credence. Kinsella noted that after Little was shown the tape, Oliver asked him a question unrelated to the duration of the meeting, which Little refused to answer. Pl.'s Exh. 6, at 36. This is consistent with Oliver's recounting, which stated that after Little saw the tape, Oliver asked him to relate the contents of the conversation, which Little repeatedly refused to do. Def.'s Exh. D-2, at 11-12. In addition, Kickels reported the altercation with Little and his recollection of what was said in mid July

2000, whereas Little did not present an alternate version of the events of the July 1 meeting until the predisciplinary conference in October 2000. Def.'s Exh. D-2, at 17-19, 21, 26-27, 30-31; Def.'s Exh. B-2, at 6. The IAD investigators conducted twelve interviews of nine employees as well as reviewing documentary evidence of the events of the night of July 1. Def.'s Exh. D-2. It was entirely reasonable for the Board and the Department to conclude that the investigation was thoroughly performed and to rely on the factual conclusions of the investigators. The fact that Little disagrees with the findings of the IAD investigation and the actions taken pursuant to it does not create a material issue of fact as to the genuineness of his employer's reliance upon it. Most of his presentation acts as though we are the personnel department of the IDOR, weighing evidence and finding fact in the first instance. It goes without saying that it is not our place to reinvestigate or retry the facts reported by the IAD. See, e.g., Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000). Although Little of course offered up his own version of what transpired, the Department was not obligated to accept Little's account; their failure to do so in the face of a thorough, factually corroborated report does not create a material issue of fact. Our job is to determine not whether the employer was justified or correct in relying on the report but whether the Department reasonably and honestly relied on the findings of the IAD investigators. We conclude that they did just that. Accordingly, Little has not shouldered the burden of proving

pretext, and the Board and the Department are entitled to summary judgment of his Title VII claims.

**Section 1983 Claims**

Counts III and IV of the complaint allege that Bower and Haughey are liable to Little under 42 U.S.C. § 1983 for violating Little's constitutional rights. In response, both defendants have asserted the defense of qualified immunity. Public officials are entitled to qualified immunity from suit under 42 U.S.C. § 1983 unless the plaintiff can show that the official violated the plaintiff's constitutional rights and the legal standards that pertained to the constitutional injury were clearly established at the time the violation allegedly occurred. Myers v. Hasara, 226 F.3d 821, 828 (7th Cir. 2000). The parties focus much of their attention on whether the clarity of the law with regard to First Amendment activity, but before we can reach those issues, we must consider whether Little has shown a violation of a constitutional right. Saucier v. Katz, 121 S.Ct. 2151, 2156 (2001). If the official's actions do not rise to the level of a constitutional injury, the inquiry is at an end and the official is immune from suit. Id. Although both counts allude to substantive due process under the Fourteenth Amendment, the content of the counts and Little's arguments make it clear that his contentions rest on a theory of retaliation for activities protected by the First Amendment. Rather than turning substantive due process into a catchall backup for any asserted constitutional injury, the

Supreme Court has cautioned that a claim that finds its source in specific textual provisions of a particular amendment must be analyzed under the standards for that amendment only. See County of Sacramento v. Lewis, 118 S.Ct. 1708, 1715 (1998). Therefore, the component of the complaint premised on the Fourteenth Amendment is subsumed into the First Amendment claims, which form the only predicate for Little's § 1983 actions.

To show the constitutional violation alleged in this case, Little must satisfy a two-prong test. Vargas-Harrison v. Racine Unified Sch. Dist., 272 F.3d 964, 970 (7th Cir. 2001). He must show that he engaged in activities protected by the First Amendment and that his protected activity was a "substantial or motivating factor" in his discipline and discharge. Id. The second prong requires Little to prove that Bower and Haughey would not have taken the challenged actions but for his complaints about alleged discriminatory practices. Thomsen v. Romeis, 198 F.3d 1022, 1027 (7th Cir. 2000). If the two defendants would have followed the same path even in the absence of Little's speech, Little's claim of First Amendment retaliation fails. Id. Little cannot show that Bower and Haughey would have disciplined him differently if he had not made his charges of discrimination and retaliation, in the face of the findings of the IAD report. It is undisputed that Bower and Haughey had access to the report and had discussed its contents with others involved in the investigation before they concluded that Little's

discharge was called for. As discussed with regard to pretext, the charges contained in the report were of sufficient gravity to independently warrant the actions Bower and Haughey took in response, and Little's claim therefore lacks the necessary "but for" connection that would allow him to show a constitutional violation. Our inquiry is therefore at an end, as Bower and Haughey are qualifiedly immune from liability for the allegations of Counts III and IV.

## CONCLUSION

Based on the foregoing analysis, the motion for summary judgment is granted.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated: May 14, 2002